PEOPLE ex rel. GERHARDT v. BAKER, Police Com'r.

(Supreme Court, Appellate Division, First Department.   May 5, 1911.)

1. MUNICIPAL CORPORATIONS (§ 185*)—POLICE—REMOVAL OF OFFICER—REVIEW.
     Under Code Civ. Proc. § 2140, declaring the questions to be determined
     on certiorari, the inquiry, on review of the determination of the police
     commissioner in dismissing relator from the police force for unbecoming
     conduct, is not merely whether there is competent evidence of the facts
     necessary to authorize the determination, but also whether, on all the
     evidence, there was such a preponderance of the proof against the exist-
     ence of such facts that a jury's verdict affirming the existence thereof
     would be set aside as contrary to the evidence.
         [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
     505;  Dec. Dig. § 185.*]

2. MUNICIPAL CORPORATIONS (§ 185*)—POLICE—REMOVAL ON CHARGES—EVI-
     DENCE.
     On certiorari to review the determination of the police commissioner
     dismissing relator from the police force on findings that he was guilty of
     assault without cause or provocation, and that he arrested persons, false-
     ly charging them with assault, the whole matter growing out of an affray
     at the entrance of a saloon, *held*, that under the evidence the determina-
     tion should be reversed.
         [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
     492–509;  Dec. Dig. § 185.*]

Certiorari, on the relation of Frederick C. Gerhardt, Jr., against
William F. Baker, as Police Commissioner, to review respondent's
determination dismissing relator, a patrolman, from the police force
of the city of New York.   Reversed, and relator reinstated.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT,
MILLER, and DOWLING, JJ.

Grant & Rouss (Louis J. Grant, of counsel, Jacob Rouss, on the
brief), for relator.

Archibald R. Watson, Corporation Counsel (Harry Crone, of coun-
sel), for respondent.

MILLER, J.   [1] The relator was charged with conduct unbecom-
ing an officer, the specific charges being (1) that at or about 12:10 a. m.
on January 1, 1910, he assaulted one Ernest E. Oberst without cause or
provocation by striking him on the head with a black jack; (2) that at
that time he arrested said Oberst, falsely charging him with an as-
sault; (3) that at the same time he arrested one John T. Moore, falsely
charging him with an assault; (4) that at the same time he arrested
one August Hayes, falsely charging him with an assault.   He was
found guilty of all the charges.   The respondent seeks to sustain his
determination upon the ground that there is some evidence to support
it.   The question, however, is not merely whether there is any compe-
tent proof of the facts necessary to authorize the determination, but
also whether, upon all the evidence, there was such a preponderance
of proof against the existence of such facts that the verdict of a jury

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

affirming the existence thereof would be set aside as contrary to the evidence. Section 2140, Code Civ. Proc.

[2] The charges grew out of an affray at about the time stated at or near the entrance to a saloon on Thirtieth street, between Seventh and Eighth avenues, kept by said Moore. The said Oberst was Moore's bartender, and Hayes was a crony of Oberst and an habitué of the saloon. They and one McGee, also a crony of Oberst and an habitué of the saloon, were the witnesses against the relator. It is undisputed that the relator arrested Oberst, Moore, and Hayes, and charged Moore with interfering with an officer, Oberst and Hayes with assault. So the charge of making a false charge of assault against Moore falls at the outset. Oberst admitted that he struck the relator at least once, and "gave him one black eye." Hayes denied that he struck the relator at all, and asserted that he did not become involved until after the trouble was over, when he asked Oberst a question, whereupon the relator, without cause, arrested him. Oberst admitted that Hayes "got in the mix-up," and an officer who came to the relator's assistance and the lieutenant in charge of the desk at the police station both testified that Hayes said at the station, "We had no right to hit the cop in uniform," or substantially that. Hayes would not deny that he was drunk, and the evidence plainly shows that both he and Oberst were considerably under the influence of liquor; the latter being so boisterous that he had to be confined in a separate room at the station while the lieutenant was getting an account of the occurrence. It is undisputed that the relator received two black eyes, cuts, and bruises on his face and neck, and a blow upon the mouth sufficient to draw blood, and that at 8 o'clock in the morning, when he was examined by a surgeon, both eyes were swollen nearly shut. He was on sick leave and under the care of a physician for 10 days. It is not pretended that any but Oberst and Hayes struck him. Indeed, there is no denial that his injuries were caused by them, but for the testimony of Hayes above mentioned. All but the first charge then were plainly disproved.

The relator testified that, when near the said saloon, at about midnight on the date in question, he heard two pistol shots and saw Moore in front of the saloon; that he inquired of the latter if he fired the shots, to which he replied that it was none of his (the relator's) "damned business"; that he then undertook to enter the saloon, informing Moore that he was going in to investigate, but Moore said that he could not go in and tried to prevent his doing so; that he then informed Moore that he was under arrest, whereupon Moore tried to get in the saloon and close the door in his face; that a scuffle ensued, Moore being within the saloon and the relator apparently about on the threshold; that while he and Moore were struggling in the doorway Oberst approached from within the saloon and struck him twice, and thereupon he pulled his "black jack" and struck Oberst on the head, just as the latter was making a third attempt to strike him; that then Hayes came up and struck him three or four times, when he backed up against the door and drew his pistol; and that he was struggling

with Moore and Hayes for the possession of it when another officer arrived. The said officer testified that, when he arrived, the relator was backed up against a door or window holding Oberst with one hand, and that both he and Moore had hold of the pistol, and that Hayes was nearby.

There is nothing to discredit the relator's testimony as to his purpose in seeking entrance to the saloon. Moore admitted that the relator approached him with the question or a statement as to his firing the pistol, but denied making the reply stated or that he opposed the relator's entrance into the saloon; on the contrary, he says that he backed directly into the saloon and up against the bar, the relator following and having hold of his coat collar. Oberst corroborated him in that, and they both testified that thereupon Oberst came from behind the bar and asked what the trouble was; whereupon the relator suddenly, without warning and without provocation, struck Oberst on the head with the black jack. McGee corroborated Moore and Oberst as to the unprovoked assault upon the latter, but said that the whole occurrence took place within 2 feet or 2½ feet of the door, thus corroborating in a measure, unwittingly no doubt, the relator's testimony that his effort to enter was opposed. That testimony is also corroborated by an apparently disinterested witness, who testified that he saw from the street the men struggling in the doorway.

The story of the wanton and unprovoked assault upon Oberst is almost too improbable for belief, even if it did not bear upon its face evidence of its own untruth. Oberst did not have to come from behind the bar to ask what the trouble was, and his purpose in doing that is too obvious to require comment. The condition of the relator when the affray was over is the best evidence of how that purpose was executed. Moore and McGee both testified that the relator struck Oberst but once with the black jack. On cross-examination Oberst was led into making a very significant statement. I quote:

"Q. You think, if you had struck him a second time, you would have given him another black eye? A. If I had a chance, I would have done it, too. Q. You would have given him another black eye? A. I certainly would; yes, sir. Q. And the reason now that you did not hit him twice was because he had only one black eye; is that it? A. No; because he hauled off with the jack, and hit me again."

Oberst was a larger, heavier man than the relator, and it is quite evident that the blow on the head was sufficient to quiet him until the other officer came, when the relator was still holding him with one hand.

During the examination of each witness, the others were excluded from the room. The alleged unprovoked assault upon Oberst is about the only thing upon which the stories of the witnesses against the relator agree. As already stated, Hayes does not claim to have seen that. It would unduly extend this opinion to call attention to all of the variances and discrepancies in the said testimony. The testimony of McGee was impeached by his statement, insisted upon, that several days after the occurrence, in discharge of what he considered his duty as a citizen and without being requested to do so, and without consult-

ing any one, he went to the city hall to lay the matter before the mayor, and there to his surprise found Oberst and Moore on the same errand. The trial deputy had the advantage of seeing the witnesses, but the well-known character of the neighborhood in which the occurrence took place is not to be overlooked.

On hearing the pistol shots, it was the relator's duty to investigate, and in the discharge of that duty he had the right to enter the saloon. The credible evidence and all the surrounding circumstances show that at the outset Moore resisted him in the effort to discharge that duty. That justified Moore's arrest, and naturally strengthened the relator's belief that something was wrong within the saloon. The relator's story of what occurred within the saloon is probable and borne out by all the surrounding circumstances. The other story, though related by more witnesses, is grossly improbable, and the testimony in support of it is impeached in many ways. It is evident that if the relator had not used his black jack with some effect on Oberst, and if the other officer had not come to his assistance when he did, the relator would have been more seriously injured than he was. It is a serious offense to assault an officer or resist him in the discharge of his duty, and those who undertake to do it should not expect to be handled tenderly. The relator was plainly justified in using the weapons at hand to defend himself.

The determination of the commissioner on a disputed question of fact is not to be lightly set aside; but, in the view we take of the evidence, our duty under the statute is plain.

The determination should be reversed, with $50 costs and disbursements, and the relator reinstated. All concur.